**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASHLEY GENNOCK and DANIEL STYSLINGER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | Filed Electronically |
| GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs ASHLEY GENNOCK and DANIEL STYSLINGER ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC. ("GNC" or "Defendants"), and states:

## INTRODUCTION

1.      This is a class action regarding Defendants' false and misleading advertisement of "regular" prices and corresponding false "sale" prices on products sold at www.gnc.com (the "Website").

2.      During the Class Period (defined below), Defendants continually misled consumers by advertising products at discounted, "sale" prices. Defendants compared the "sale" prices to false "regular" prices, which were misrepresented as the market retail prices from which the "savings" was discounted. The advertised discounts were nothing more than mere phantom markdowns because the represented "regular" prices were artificially inflated and were never the original or market prices for products sold through the Website.

3.     Defendants convey their deceptive pricing through their Website.  Specifically, Defendants represent that certain products once were offered at a "regular" price, which represents the products former or market price, but now, are being offered at "sale" prices.

4.     The "regular" price, however, never existed.  The difference between the "sale" and "regular" prices is a false savings percentage used to lure consumers into purchasing products they believe are significantly discounted.

5.     Through their false, misleading and deceptive marketing, advertising and pricing scheme, Defendants violated, and continue to violate Pennsylvania law prohibiting advertising goods for sale as discounted from former or market prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.   Specifically, Defendants violated, and continue to violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, *et seq.*, the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1), and false advertisements, 15 U.S.C. § 52(a), and other similar consumer protection statutes.  Defendants' also have been unjustly enriched by and through their conduct as alleged herein.

6.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more products from Defendants' Website that were deceptively represented as discounted from false former or market prices in order to halt the dissemination of this false, misleading, and deceptive price scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased these products.  Plaintiffs seek damages, attorney's fees and costs, and all other

relief deemed appropriate under the UTPCPL and similar state consumer protection laws, and restitution for Defendants' unjust enrichment.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed class have a different citizenship from Defendants.  There are more than 100 putative class members.

8.      This Court has personal jurisdiction over Defendants because they maintain their principal place of business in Pennsylvania, regularly conduct business in Pennsylvania, and have sufficient minimum contacts in Pennsylvania.  Defendants intentionally avail themselves of this jurisdiction by marketing and selling products from and within Pennsylvania to millions of consumers nationwide.

9.      Venue is proper under 18 U.S.C. § 1391(a) because Defendants' principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

10.      Plaintiff Ashley Gennock, at all relevant times hereto, was and is a resident and citizen of Pennsylvania.

11.      Plaintiff Daniel Styslinger, at all relevant times hereto, was and is a resident and citizen of Pennsylvania.

12.      Defendant General Nutrition Centers, Inc. is a Delaware Corporation headquartered in Pittsburgh, Pennsylvania.

13.     Defendant GNC Holdings, Inc. is a Delaware Corporation headquartered in Pittsburgh, Pennsylvania.

14.     Defendants operate www.gnc.com, and are one of the largest retailers of supplements, and health and diet products in the world.

## STATEMENT OF FACTS

15.     On www.gnc.com, Defendants offer consumers myriad products for sale, including supplements, and health and diet products.

16.     When a consumer searches a product, GNC displays a catalog of products responsive to the customer's request. Each product contains a title, and among other things, pricing information.

17.     For all "on sale" products, Defendants uniformly display two prices: 1) the "Regular Price"; and 2) the "Sale Price." The "Regular Price" is presented in grey font and is smaller than the "Sale Price," which is presented in red font. The "Regular Price" is found immediately above the "Sale Price."

18.     When a customer selects a product from the catalog of relevant products, they are directed to a webpage for the specific product selected. This page displays specific information about the selected product, including its name, price, description, facts and ingredients.

19.     For all "on sale" products, Defendants prominently and uniformly display in the middle of the page the discount pricing information. The regular price is displayed as "Price" in black font and contains a strikethrough. The "Sale Price" is displayed immediately below in red font. Identical to the catalog display, the "Price" with a strikethrough is larger than the "Sale Price."

20.     Defendants' pricing information regarding its "on sale" products is false, misleading and deceptive because the "sale" price is the same as, or above, the products' actual market and/or former price, and the "regular" price is a false price at which the product was never sold.  Indeed, many, if not all of the "on sale" products located on Defendants' Website have never been sold at their "regular" price.

21.     On or around April 27, 2016, Plaintiff Gennock visited Defendants' Website to purchase products.  Upon examining a whey protein product, she observed that it was offered at a sale price of $29.99, discounted from a regular price of $53.99.  Believing that she was receiving a significant value by purchasing the whey protein product for $29.99, when it originally was priced at $53.99, Plaintiff decided to purchase the product, entered her personal information into Defendants' Website, and did in fact purchase the product.

22.     Specifically relying upon Defendants' misrepresentations, and false and deceptive advertising, Plaintiff Gennock purchased an item for what she believed was over 40% off from the original retail and/or market price.  The price display indicated the "regular" price of the item was close to twice as much as the discounted price.  The purported "regular" price, and corresponding price discounts and savings, however, were false, misleading and deceptive, as the prevailing retail/market price for the item was never the "regular" price advertised by Defendants and Defendants have never sold the product at its purported "regular" price.

23.     On or around April 27, 2016, Plaintiff Styslinger visited Defendants' Website to purchase products.  Upon examining a whey protein product, he observed that it was offered at a sale price of $29.99, discounted from a regular price of $49.99.  Believing that he was receiving a significant value by purchasing the whey protein product for $29.99, when it original was priced

at $49.99, Plaintiff decided to purchase the product, entered his personal information into Defendants' Website, and did in fact purchase the product.

24.     Specifically relying upon Defendants' misrepresentations, and false and deceptive advertising, Plaintiff Styslinger purchased an item for what he believed was approximately 40% off from the original retail and/or market price.  The price display indicated the "regular" price of the item was close to twice as much as the discounted price.  The purported "regular" price, and corresponding price discounts and savings, however, were false, misleading and deceptive, as the prevailing retail/market price for the item was never the "regular" price advertised by Defendants and Defendants have never sold the product at its purported "regular" price.

25.     Plaintiffs would not have purchased the items without the misrepresentations made by Defendants.  Furthermore, Plaintiffs could have purchased their items at a lower cost had Defendants' conduct not deceived them into believing that Defendants' products were being sold at a discount.  Plaintiffs have been personally victimized by and suffered economic injury as a direct result of Defendants' unlawful, unfair, and fraudulent conduct.

26.     Further, Defendants' conduct is deceptive because it leads consumers, including Plaintiffs and the class, to believe that Defendants' products are regularly sold at the high "regular" prices, but now are being sold at the substantially lower "sale" prices.  This deceives consumers into believing that they are receiving a bargain on their purchase, when in fact, they are merely purchasing a product at, or above, its actual market price.  If consumers, including Plaintiffs and the class, knew that Defendants' products were not on sale, but actually, were being sold at, or above, their market prices, they would not purchase those products.

27.     Defendants know that their comparative price advertising is false, deceptive, and misleading.

6

28.     Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the proposed class the truth about the advertised "sale" prices and former "regular" prices.

29.     At all relevant times, Defendants have been under a duty to Plaintiffs and the proposed class to disclose the truth about their false price discounts.

30.     Plaintiffs and the class members relied upon Defendants' artificially inflated "regular" prices and false discounts when purchasing items from Defendants' Website.  Plaintiffs and the class members would not have made such purchases but for Defendants' representations of fabricated "regular" prices and false discounts.

31.     Plaintiffs and the class reasonably and justifiably acted and relied on the substantial price differences that Defendants advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was.  Plaintiffs, like other class members, were lured in, relied on, and damaged by these pricing schemes that Defendants carried out.

32.     Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the proposed class to purchase Defendants' products from its Website.

**CLASS ALLEGATIONS**

33.     Plaintiffs bring this action on behalf of themselves and all other similarly situated class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and seek to certify the following multi-state class:

> All individuals who, within the applicable statute of limitations preceding the filing of this action, purchased products at a discount through Defendants' Website in states that have laws similar to the UTPCPL and Pennsylvania's unjust enrichment laws.

34.     In the alternative, Plaintiffs seek to certify the following state-wide class:

All individuals in the State of Pennsylvania who, within the applicable statute of limitations preceding the filing of this action, purchased products at a discount through Defendants' Website.

35.     Excluded from the classes are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any of the Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

36.     ***Numerosity***: The class members are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the proposed class contain hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein.  The precise number of class members is unknown to Plaintiffs.

37.     ***Ascertainability***: The class members are ascertainable through records kept by Defendants.  In order to purchase products from Defendants' Website, Plaintiffs and the class members were required to input their personal and financial information.  Defendants record this information, as well as the products the class members purchased when they entered their personal information, in internal databases.

38.     ***Existence and Predominance of Common Questions of Law and Fact***:  This action involves common questions of law and fact, which predominate over any questions affecting individual class members.  These common legal and factual questions include, but are not limited to, the following:

a.      Whether, during the Class Period, Defendants used false "regular" price displays and falsely advertised price discounts on products offered through their Website;

b.      Whether, during the Class Period, the "regular" prices advertised by Defendants were the prevailing market prices for the products sold on their Website during the three months period preceding the dissemination and/or publication of the advertised former prices;

c.      Whether Defendants' alleged conduct constitutes violations of the laws asserted;

d.      Whether other states have laws sufficiently similar to the UTPCPL and Pennsylvania's unjust enrichment laws, and whether these laws provide similar relief to aggrieved individuals;

e.      Whether Defendants engaged in unfair, unlawful, false, misleading or deceptive advertising;

f.      Whether Plaintiffs and class members are entitled to damages and the proper measure of that loss; and

g.      Whether an injunction is necessary to prevent Defendants from continuing to use false, misleading or illegal price comparison.

39.     *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the class because, *inter alia*, all class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the class.

40.     *Adequacy*:  Plaintiffs will fairly and adequately protect the interests of the members of the class.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no antagonistic or adverse interest to those of the class.

41.     *Superiority*: The nature of this action and the nature of laws available to Plaintiffs and the class make the use of the class action format a particularly efficient and appropriate procedure to afford relief for themselves and the class for the wrongs alleged.  The damages or

other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiffs and class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent class action litigation, class members and the general public would not likely recover, or would not likely have the chance to recover damages, and Defendants will be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

42.   All class members, including Plaintiffs, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that former "regular" advertised prices were in existence.  Due to the scope and extent of Defendants' consistent false price advertising scheme, disseminated in a years-long campaign to Pennsylvania consumers via Defendants' Website, it is reasonable to infer that such misrepresentations or omissions of material fact were uniformly made to all members of the class.  In addition, it is reasonable to presume that all class members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendants' false advertising scheme when purchasing products from Defendants' Website.

43.   ***Choice of Law (Consumer Protection)***: In regards to Plaintiffs consumer protection claims, forty states and the District of Columbia, similar and in addition to Pennsylvania's UTPCPL, have enacted consumer protection laws designed to protect consumers against unfair and deceptive acts and practices.  The products sold on Defendants' Website constitute products or goods under these laws, and the consumers who purchased these products qualify as consumers or persons under these laws.  Furthermore, Defendants' conduct is illegal under these statutes as it constitutes as deceptive and/or unfair, or is specifically prohibited by

10

these statutes.  Finally, these statutes provide a private right of redress to consumers for the losses they have suffered as a result of Defendants' prohibited conduct.  Accordingly, Plaintiffs' claims under the UTPCPL are sufficiently similar to the consumer protection laws of these jurisdictions. The jurisdictions with consumer protection laws similar to Pennsylvania are:

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*;

d.   California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, *et seq.*;

g.   Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §2511, *et seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901, *et seq.*;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*;

j.   Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*;

k.   Hawaii Unfair and Deceptive Practices Act, Haw. Rev. Stat. §480-1, *et seq.* and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1, *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601, *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann. §50-623, *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110, *et seq.* and Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §365.020, *et seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, *et seq.*;

q.     Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §205A, *et seq.* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211, *et seq.*;

r.     Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, §1, *et seq.*;

s.     Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, *et seq.*;

t.     Minnesota Prevention of Consumer Fraud Act, Minn. Stat. 0§325F.68, *et seq.* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.*;

u.     Mississippi Consumer Protection Act, Miss. Code Ann. §75-24-1, *et seq.*;

v.     Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

w.     Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. §30-14-101, *et seq.*;

x.     Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.* and Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903, *et seq.*;

z.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1, *et seq.*;

aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1, *et seq.*;

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §57-12-1, *et seq.*;

cc.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349, *et seq.*;

dd.    North Dakota Consumer Fraud Act, N.D. Cent. Code §51-15-01, *et seq.*;

ee.    Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§1345.02, 1345.03 and Ohio Admin. Code §§109:4-3-02, 109:4-3-03, 109:4-3-10;

ff.    Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §751, *et seq.*;

gg.    Oregon Unfair Trade Practices Act, Or. Rev. Stat §646.608(1)(e), (g);

hh.    Rhode Island Unlawful Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, *et seq.*;

ii.     South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.*;

jj.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §37-24-1, *et seq.*;

kk.     Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*;

ll.     Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451, *et seq.*;

mm.    Washington Consumer Protection Act, Wash. Rev. Code §19.86.010, *et seq.*;

nn.     West Virginia Consumer Credit and Protection Act, W. Va. Code §46A-6-101, *et seq.*; and

oo.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq.*

44.    ***Choice of Law (Unjust Enrichment)***: In regards to Plaintiffs' unjust enrichment claim, the substantive law of unjust enrichment is consistent across all jurisdictions, generally requiring that the defendant receive or obtain something of value, and that it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  Accordingly, Plaintiffs' claims under Pennsylvania's unjust enrichment law are sufficiently similar to the unjust enrichment laws of all fifty states and the District of Columbia.

## COUNT I
### Violation of the Pennsylvania Unfair Trade
### Practices and Consumer Protection Law ("UTPCPL")
### And Similar State Consumer Protection Statutes

45.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

46.    Plaintiffs bring this action individually under the laws of Pennsylvania, and on behalf of the multi-state class.  In the alternative, this claim is brought on behalf of the state-wide class.

47.    Plaintiffs and Defendants are "persons" within the meaning of the UTPCPL.

48.     The products purchased by Plaintiffs and the class are "goods…primarily for personal, family or household purposes."  73 P.S. § 201-9.2.

49.     The UTPCPL declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 21 of this act."  73 P.S. § 201-3.

50.     Under clause (4), unfair methods of competition and unfair or deceptive acts or practices are defined as "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  73 P.S. § 201-2(4)(xi).

51.     Clause (4) also defines as unlawful as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

52.     Defendants violated the UTPCPL because it made false and misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

53.     Defendants also violated the UTPCPL because their pricing scheme was deceptive in that it created the likelihood that consumers would be confused and deceived into believing that they were purchasing products at substantial discounts, when in fact, they were not.  Indeed, the "on sale" products purchased by Plaintiffs and the class members actually were being sold at, or above, their market price, yet Plaintiffs and the class members purchased these products believing that the products were substantially discounted from the price at which they regularly were sold.

54.     Similarly, under the FTCA, which prohibits "unfair or deceptive acts or practices in or affecting commerce," (15 U.S.C. § 45(a)(1)), and prohibits the dissemination of any false advertisements,  (15 U.S.C. § 52(a)), false former pricing schemes, like those implemented by Defendants, are described as deceptive practices, and in violation of the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an article price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

55.     Plaintiffs have suffered an ascertainable loss as a result of Defendants' conduct because they purchased a product they otherwise would not have purchased but for Defendants' fraudulent and deceptive pricing scheme.  Moreover, absent Defendants' deceptive and misleading conduct, Plaintiffs could have purchased their products at a lower cost than offered by Defendants.

56.     Accordingly, Plaintiffs and the class are entitled to recover actual damages, statutory damages, treble damages and/or other additional relief as this court deems necessary or proper.  Additionally, Plaintiffs are entitled to costs and reasonable attorney fees.

## COUNT II
### Unjust Enrichment

57.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

58.     Plaintiffs bring this action individually under the laws of Pennsylvania, and on behalf of the multi-state class.  In the alternative, this claim is brought on behalf of the state-wide class.

59.     Plaintiffs conferred a benefit on Defendants by purchasing products falsely advertised as "on sale."

60.     Defendants appreciated such benefits by charging Plaintiffs bank accounts and accepting payment from the same.

61.     Defendants have accepted and retained the benefits appreciated as they have not remitted the payments made by Plaintiffs.

62.     Finally, it would be inequitable for Defendants to retain the benefits they accepted. Plaintiffs would not have purchased products from Defendants' Website absent Defendants' false and deceptive conduct.   Additionally, Plaintiffs could have paid less for the products they purchased had they known the "on sale" products they purchased actually were being sold at, or above their market prices.   Accordingly, Plaintiffs' payments to Defendants unjustly enriched Defendants because Plaintiffs either would not have made those payments to Defendants, or Plaintiffs could have purchased the same products for a lower value absent Defendants' unfair, unlawful and deceptive conduct.

63.     Plaintiffs and the members of the class are entitled to restitution and/or disgorgement of some or all profits, benefits and other compensation obtained and retained by Defendants from their deceptive, misleading and unlawful conduct.

## PRAYER FOR RELIEF

64.     Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the class, requests that this Court award relief against Defendants. as follows:

a.     An order certifying the class and designating Ashley Gennock and Daniel Styslinger as the class Representatives and their counsel as Class Counsel;

b.     Awarding Plaintiffs and the proposed class members damages;

c.   Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervisions, victims of its misconduct and pay them all money they are required to pay;

d.   Order Defendants to engage in a corrective advertising campaign;

e.   Awarding attorneys' fees and costs; and

f.   For such other and further relief as the Court may deem necessary or appropriate.

Dated: May 17, 2016                              Respectfully submitted,

                                                 */s/ Benjamin J. Sweet*
                                                 Benjamin J. Sweet
                                                 R. Bruce Carlson
                                                 Gary F. Lynch
                                                 Edwin J. Kilpela
                                                 **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
                                                 1133 Penn Avenue, 5th Floor
                                                 Pittsburgh, Pennsylvania 15222
                                                 Telephone: (412) 322-9243
                                                 Facsimile: (412) 231-0246
                                                 bsweet@carlsonlynch.com
                                                 bcarlson@carlsonlynch.com
                                                 glynch@carlsonlynch.com
                                                 ekilpela@carlsonlynch.com

                                                 Todd D. Carpenter
                                                 **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
                                                 402 West Broadway, 29th Floor
                                                 San Diego, California 92101
                                                 Telephone: (619) 347-3517
                                                 Facsimile: (619) 756-6990
                                                 tcarpenter@carlsonlynch.com

                                                 *Attorneys for Plaintiffs*