**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIM CARTER, ASHLEY GENNOCK, KENNETH HARRISON, JENNA KASKORKIS, and DANIEL STYSLINGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GENERAL NUTRITION CENTERS, INC., a Delaware Corporation, GNC HOLDINGS, INC., a Delaware Corporation,<br><br>Defendants. | Case No: 2:16-cv-00633-MRH<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>Chief Judge Mark R. Hornak<br><br>Filed Electronically<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Kim Carter, Ashley Gennock, Kenneth Harrison, Jenna Kaskorkis, and Daniel Styslinger ("Plaintiffs"), individually and on behalf of all others similarly situated, based on the investigation of counsel as to the actions and omissions of defendants herein, and by their own individual knowledge as to those averments pertaining to their own circumstances, hereby complain against defendants General Nutrition Centers, Inc. and GNC Holdings, Inc. (collectively, "GNC" or "Defendants") as follows:

## INTRODUCTION

1. This is a civil class action seeking monetary damages, restitution, and injunctive and declaratory relief from GNC arising from its deceptive and misleading labeling and marketing of merchandise it sells on its Internet website: www.gnc.com.

2. During the Class Period, GNC misrepresented the existence, nature, and amount of price discounts on products for sale on its website by purporting to offer steep discounts off of

fabricated, arbitrary, and false former prices.

3. Specifically, on its website GNC represented "Regular Price(s)" that were artificial, arbitrary, and did not represent a bona fide price at which GNC formerly (or ever) sold the given product. Nor were the advertised "Regular Price(s)" prevailing market retail prices within three months immediately preceding the publication of the advertised former prices, as required by California law.

4. Having touted a false "Regular Price," GNC then offered, on the same web page as the false "Regular Price" representation, to sell the given product at a price termed "Sales Price," which supposedly represented a discount off of the false "Regular Price."

5. But GNC's "Regular Price" representation, which represented to consumers the purported market or former price of the given product, was a sham. The "Regular Price" advertised for a given product did not represent a market price at all — much less a former price in the preceding three months. GNC's "Regular Price" is a fictional creation designed to enable GNC's phantom markdowns.

6. For example, any product can be falsely advertised as "fifty-percent off" if an unscrupulous retailer creates a fictional "Regular Price" that is twice the actual market price of the product. Moreover, any good can be advertised as on "sale" or "discounted" if the unscrupulous seller uses a fictitious market price as the source of comparison. Dishonest retailers are able to use the above-described deceptive practices to successfully mislead consumers. This is because representations regarding discounts are material; they are a fundamental representation of a good's value and, therefore, effectively motivate purchases. GNC markets its products in this deceptive manner, advertising false discounts to increase its sales and promote itself as a low cost retailer.

7. The Federal Trade Commission ("FTC") describes the fictitious pricing scheme

employed by GNC as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. *If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising* of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. *If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a) (emphasis added).

8. Similarly, California statutory and regulatory law expressly prohibits false pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

9. When marketing products on its website, GNC displays a "sale" price along with a purported "regular" price to invite comparison. The regular price is displayed either in struck-through typeface (*e.g.* "~~Price: $59.99~~") or grayed typeface (*e.g.* "Regular Price: $59.99") that is placed directly above the more prominently displayed "sale price" presented in red font (*e.g.* "Sales Price: $59.99"). Any reasonable consumer viewing GNC's website would believe that the "~~Price: $XX.XX~~" or "Regular Price: $XX.XX" is GNC's normal price for the product and/or the

prevailing price of the market (*i.e.* the "regular" price). The difference between this "Regular" price and GNC's "Sales Price" is viewed as a discount or purported savings. GNC's advertised "discounts," however, are completely illusory or, at best, grossly overstated.

10. GNC's "regular" price is not the prevailing market price for the subject product from either one of GNC's competitors or the price charged by GNC for the product in the regular course of its business. Rather, the "regular" price is either (1) the highest price the product has ever been listed for, regardless of when the price was advertised, or (2) is simply a fiction. Stated plainly, GNC cherry-picks the highest price it can find for an item and uses it as a benchmark to create the appearance of a significant price discrepancy and convey the impression of considerable savings. Instead, it is GNC's "sale" prices that are the regular price for which its subject products are offered.

11. GNC's "sale" prices, in reality, are often higher than the prices of its competitors and products marked as on "sale" are invariably sold without a true discount. GNC's customers are not receiving the benefit of the savings advertised by purchasing "discounted" products from GNC. In fact, even if GNC's prices were competitive with other retailers in the market (which they are not), a customer still incurs higher costs by purchasing a product through GNC.com due to shipping and handling fees, expenses not incurred at traditional brick-and-mortar retailers.

12. Thousands of consumers, including the Plaintiffs, were victims of GNC's deceptive, misleading, and unlawful false pricing scheme and thousands more will be so victimized if the practices continue.

13. GNC fraudulently concealed from, and intentionally failed to disclose to Plaintiffs and others similarly situated the truth about what it called its "Regular Price(s)" and advertised price discounts from those supposedly former or "Regular" prices.

14. Plaintiffs relied upon such false representations of the "Regular Price" and so-called discounts when purchasing goods from the GNC website. Plaintiffs would not have made such purchases, or would not have paid the amount they did, but for GNC's false representations of the former price or "Regular Price" of the goods they purchased, as compared with the supposedly discounted "Sales Price" at which GNC offered the items for sale.

15. Plaintiffs, in short, believed the truth of the price representations attached to the products they purchased from GNC, which expressly told them that they were getting a bargain on their purchases. In fact, Plaintiffs were not receiving bargains at all.

16. Through its false and deceptive marketing, advertising, and pricing scheme, GNC violated (and continues to violate) California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, GNC violated (and continues to violate) California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17501, *et seq*., the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1770, *et seq*., the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17000, *et seq*., Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, *et seq*., and the Federal Trade Commission Act ("FCTA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. § 52(a); 15 U.S.C. § 45(a)(1). Additionally, Plaintiffs bring an action for unjust enrichment and breach of the implied covenant of good faith and fair dealing.

17. Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution and other equitable remedies, including declaratory relief and injunctive relief.

## JURISDICTION AND VENUE

18. This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b). Plaintiffs and Class members are citizens of different states as the Defendants, and more than two-thirds of the proposed plaintiff class, on the one hand, and Defendants, on the other, are citizens of different states. The aggregate amount in controversy for Plaintiffs and the Class members exceeds $5 million, exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendants because Defendants are headquartered in Pennsylvania, conduct business in Pennsylvania, and otherwise intentionally avail themselves of the markets in Pennsylvania to render the exercise of jurisdiction by this Court proper. Defendant has also marketed, promoted, distributed, and sold the products in California.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because all defendants reside in this District and because a substantial part of the acts and transactions giving rise to the violations of law complained of herein occurred in this District, and because Defendants:

(a) conduct business itself or through agent(s) in this District by advertising, marketing, distributing, and/or retailing its products in this District; and/or

(b) are licensed or registered in this District; and/or

(c) otherwise have sufficient contacts with this District to justify Defendants being fairly brought into court in this District.

## PARTIES

21. Plaintiff Jenna Kaskorkis, at all relevant times hereto, was and is a resident and citizen of California. Plaintiff Kaskorkis purchased the products alleged herein from GNC.com, while residing in California.

22. Plaintiff Kim Carter, at all relevant times hereto, was and is a resident and citizen of California. Plaintiff Carter purchased the products alleged herein from GNC.com, while residing in California.

23. Plaintiff Kenneth Harrison, at all relevant times hereto, was and is a resident and citizen of California. Plaintiff Harrison purchased the products alleged herein from GNC.com, while residing in California.

24. Plaintiff Ashley Gennock, at all relevant times hereto, was and is a resident and citizen of Pennsylvania. Plaintiff Gennock purchased the products alleged herein from GNC.com, while residing in Pennsylvania.

25. Plaintiff Daniel Styslinger, at all relevant times hereto, was and is a resident and citizen of Pennsylvania. Plaintiff Styslinger purchased the products alleged herein from GNC.com, while residing in Pennsylvania.

26. Defendants GNC Holdings, Inc. and General Nutrition Centers, Inc., are Delaware corporations headquartered in Pittsburgh, Pennsylvania. GNC is one of the largest online retailers of nutritional supplements, health and diet products, and beauty supplies in the United States. GNC operates a retail store website: www.gnc.com.

## FACTUAL ALLEGATIONS

27. Customers of the GNC retail website can navigate its contents by either using a key-word search to find a specific product or by browsing products grouped by category (*e.g.*, "Vitamins," "Sports Nutrition," *etc.*). Regardless of the method, consumers are presented with webpages of "results" responsive to their request. These result webpages provide a title, price, and picture of multiple products fitting the description of the product of interest, so that a consumer can quickly find the item they wish to purchase:




GNC displays only a limited amount of information on its "results pages." Among the information provided are the product's "Regular Price" and its "Sales Price." Immediately below the regular price is GNC's "Sales Price," which is lower than the Regular Price and displayed in red, bold font. Sale prices are found only on select products, thereby reinforcing the perception that these products are on sale.

28. When a customer selects a product from the results webpage, they are directed to a webpage that contains detailed information about the selected product. GNC's discount pricing is prominently displayed on this webpage as well. Using the protein powder purchased by Plaintiffs

as an example, the following is an excerpt from GNC's webpage for the Optimum Nutrition 100% Whey protein powder:




Similar to the results webpage, GNC uniformly presents its "Regular Price" in stricken typeface and the "Sales Price" in red font.

29. Plaintiffs' purchases demonstrate Defendants' false and misleading discounts in practice. On or about March 10, 2016, Plaintiff Kaskorkis shopped on the GNC website. She observed that merchandise was advertised with a "Regular Price" directly next to a significantly reduced "Sale Price." Enticed by the idea of paying a price significantly less than the market price, Kaskorkis was induced to purchase two items: a 2 lb. container of Optimum Nutrition 100% Whey Gold Standard™ French Vanilla Creme protein powder (the produced identified in the above screenshots), and a 60-tablet bottle of Healthy Natural Systems' Garcinia Cambogia Extract. GNC represented the Optimum Nutrition Whey 100% Gold Standard™ protein powder as having a "Regular Price" of $49.99, with a "Sale Price" of $34.99. Similarly, GNC advertised the Healthy Natural Systems® Garcinia Cambogia Extract with a "Regular Price" of $26.99 and a "Sale Price" of $17.99. Kaskorkis purchased these items for the advertised "Sale Price."

30. By purchasing the Optimum Nutrition Whey 100% Gold Standard™ protein powder and Healthy Natural Systems® Garcinia Cambogia Extract for the "Sale Price" of $34.99 and $17.99, respectively, instead of the "Regular Price" or market price, Kaskorkis was led to believe that she saved approximately 33% on her purchase. In reality, GNC never sold or intended to sell these items at the represented market or "Regular Price." Thus, Kaskorkis was deceived by the false price comparison into making a full retail purchase with no discount.

31. Similarly, on February 13, 2016, Plaintiff Carter also purchased a number of products from GNC's website based on Defendants' false pricing representations. For example, Carter purchased a 12-pack of Quest Protein Bars: Cookies and Crème flavor for the "Sale Price" of $25.99. The same product also was advertised as having a "Regular Price" of $35.99. Accordingly, Defendants represented that Carter was saving approximately 30% of the product's regular price. Defendants, however, had been offering the 12-pack of Quest Protein Bars for $25.99 in the three months preceding her purchase. Carter saved nothing when compared to Defendants' regular pricing. But even worse, other retailers, including the manufacturer of the Quest Protein Bars, had been selling the same product for $24.99 (a dollar less than Defendants' price) at the same time and in the three months preceding Carter's purchase. Accordingly, Carter actually paid more purchasing Defendants' "discount" products than she would have had she purchased them from GNC's competitors.

32. On or around April 27, 2016, Plaintiff Gennock visited GNC's website to purchase products. Upon examining a whey protein product, she observed that it was offered at a sale price of $29.99, discounted from a regular price of $53.99. Believing that she was receiving a significant value by purchasing the whey protein product for $29.99, when it originally was priced at $53.99, Gennock decided to purchase the product, entered her personal information into GNC's website,

and did in fact purchase the product.

33. Specifically relying upon Defendants' misrepresentations, and false and deceptive advertising, Plaintiff Gennock purchased an item for what she believed was over 40% off from the original retail and/or market price. The price display indicated the "regular" price of the item was close to twice as much as the discounted price. The purported "regular" price, and corresponding price discounts and savings, however, were false, misleading and deceptive, as the prevailing retail/market price for the item was never the "regular" price advertised by Defendants and Defendants have never sold the product at its purported "regular" price.

34. On or about November 26, 2016, Plaintiff Harrison purchased Isopure Low Carb Protein Powder Creamy Vanilla 7.5 lbs. from GNC's website. The regular price of Nature's Best Isopure Zero Carb Creamy Vanilla 7.5 lbs. as advertised on GNC's website is $189.99, with a "Sale Price" of $139.99. Believing that he was receiving a significant value by purchasing Isopure product, Harrison decided to purchase the product, entered his personal information into Defendants' website, and did in fact purchase the product. Plaintiff Harrison has made similar purchases in the past based on the prices associated with GNC's website and/or through GNC retail stores that honored the GNC "Sale Price" on its website.

35. Specifically relying upon Defendants' misrepresentations, and false and deceptive advertising, Plaintiff Harrison purchased an item for what he believed was approximately 28% off (or a $50 discount). The purported "regular" price, and corresponding price discounts and savings were illusory, as the prevailing retail/market price for the item was never the "regular" price advertised by Defendants and Defendants have never sold the product at its purported "regular" price.

36. On or around April 27, 2016, Plaintiff Styslinger visited Defendants' website to

purchase products. Upon examining a whey protein product, he observed that it was offered at a sale price of $29.99, discounted from a regular price of $49.99. Believing that he was receiving a significant value by purchasing the whey protein product for $29.99, when it originally was priced at $49.99, Plaintiff decided to purchase the product, entered his personal information into Defendants' website, and did in fact purchase the product.

37. Specifically relying upon Defendants' misrepresentations, and false and deceptive advertising, Plaintiff Styslinger purchased an item for what he believed was approximately 40% off from the original retail and/or market price. The price display indicated the "regular" price of the item was close to twice as much as the discounted price. The purported "regular" price, and corresponding price discounts and savings, however, were false, misleading and deceptive, as the prevailing retail/market price for the item was never the "regular" price advertised by Defendants and Defendants have never sold the product at its purported "regular" price.

38. Plaintiffs were not the only consumers mislead by Defendants' false and illusory discounts. A review of GNC's website reveals that hundreds of products were advertised with a similar misleading "discount." Given Defendants' prominence in the market and national operations, Defendants likely deceived tens (if not hundreds) of thousands of consumers across the United States.

39. Plaintiffs' and class members' reliance on GNC's false price comparison advertising was reasonable. In fact, empirical market studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation, … or involves any practice that may materially mislead a reasonable consumer.

Dhruv Grewal and Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, JOURNAL OF PUBLIC POLICY & MARKETING, Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55-56.

40. By using both a "Regular" and a "Sale" price, Defendants communicate that their products are discounted from their normal, everyday pricing, and are less expensive than the market price. Plaintiffs and the putative class rely on these representations to make purchasing decisions. Thus, GNC makes the "regular" price as large as possible to exaggerate the savings that are supposedly realized by either (1) using the highest "Regular" price at which a product has ever been listed on its website (regardless of when the price was established or if it represents the price at which the product would normally be sold by GNC), or (2) completely fabricating the baseline price. GNC knows, or should have known, that it misinforms its consumers regarding the discount pricing of its products.

41. GNC's illusory discounts are particularly misleading because consumers often decide to make purchases based on an internal reference price – *i.e.*, customers will often make a purchasing decision when they believe products to be less expensive than the perceived "normal" value of a given item. By featuring "discounts" derived from improper price comparisons, GNC takes advantage of this well-documented behavior in order to influence its customers into purchasing an item. GNC's practices also mollify consumers' concerns about missing a "better deal" and discourages comparison shopping by creating a false sense of urgency (an impression that the "sale" pricing is temporary and that a consumer should act quickly or lose significant savings).

42. GNC also inflates its "Regular" prices to maintain the illusion that GNC pricing is consistently lower than other retailers. "Online retailers don't use blowout sales since it's so easy to shop there. But to provide confidence to consumers that they are consistently getting good deals, it's even more important for them to provide price comparisons."[1] If GNC actually advertised a valid "Regular" price that accurately reflected the current market price of a product, consumers would be aware that GNC does not provide the deals it purportedly offers and would not make purchases from its website.

43. By way of example, at the time of Plaintiff Kaskorkis' purchase, and in the three months preceding, Bodybuilding.com offered the Optimum Nutrition 100% Whey Gold Standard Protein Powder, 2 lbs., for approximately $29.98 while Amazon.com offered the same product for approximately $29.99. GNC's price, as paid by Plaintiff Kaskorkis, was significantly more expensive at $34.99. Even the manufacturer, Optimum Nutrition, offers this product for $29.99 through its website. Yet, GNC advertises that its Optimum Nutrition 100% Whey Gold Standard protein powder is substantially discounted from the "Regular Price" of $49.99, even though this was not the actual, *bona fide* price at which the product was offered on either GNC.com or at any of its major competitors for the past three months.

44. Despite the "Regular Price"/"Sale Price" scheme used by GNC, Plaintiffs would purchase GNC products in the future from the GNC website and/or other retail establishments, if discount representations accurately reflect former prices and discounts. Currently, however, Plaintiff and consumers have no realistic way to know which—if any—of GNC's price

---

[1] *See* David Streitfeld, *It's Discounted, but Is It a Deal? How List Prices Lost Their Meaning*, NEW YORK TIMES (March 6, 2016), available at <http://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html>.

comparisons are truthful. If the Court were to issue an injunction ordering GNC to comply with California's comparative price advertising laws, and prohibiting GNC's use of the deceptive practices discussed herein, Plaintiffs would likely shop for GNC products again in the near future on the GNC website.

45. By marketing products' "Regular" prices at artificially high levels – levels that would not be competitive in the current prevailing market – GNC concocts discounts that do not exist.

46. Such practice is not novel or unique; unscrupulous retailers have historically used the same misleading tactic. Both California lawmakers and federal regulators prohibited this conduct. As stated above, California Business & Professions Code, section 17501, specifically states that:

> No price shall be advertised as a former price of any advertised thing, unless the *alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or *unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement*.

(Emphasis added).

47. The provision of section 17501 differentiates subjective uncertainty from clear illegality. The market price at the time of publication of such an advertisement is the average price charged in the locality where the advertisement is published. Accordingly, GNC can only include a "Regular" price in its advertisements, for comparative purposes, if (1) the prevailing market price has been researched (in each relevant market) and the "Regular" price is the average retail market price within the past three months, or (2) it advertises the date on which the published "Regular" price was last in effect. GNC does neither.

48. Pennsylvania law also prohibits GNCs false and misleading business practice.

Pennsylvania's Unfair Trade Practices and Consumer Protection Law expressly prohibits "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" as well as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. 201-2(4)(ix) & (xi).

49. Beyond state law, GNC's practices are also cited with disapproval by federal regulations intended to protect consumers:

> . . . a reduction from the advertiser's own former price for an article. If the *former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. *In such a case, the "reduced" price is, in reality, probably just the seller's regular price.*

16 C.F.R. § 233.1(a) (emphasis added).

50. The law thus confirms what is inherently apparent: a business acts improperly when it manufactures or exaggerates a discount intended to make products appear more attractive.

## CLASS ALLEGATIONS

51. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Classes of persons:

### NATIONAL CLASS

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action, purchased a product from the GNC website at www.gnc.com.

**CALIFORNIA SUBCLASS**

All persons in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased a product from the GNC website at www.gnc.com.

**PENNSYLVANIA SUBCLASS**

All persons in the Commonwealth of Pennsylvania who, within the applicable statute of limitations preceding the filing of this action, purchased a product from the GNC website at www.gnc.com.

Excluded from the Class are GNC, its parents, subsidiaries, affiliates, officers and directors, any entity in which GNC has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

52. Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

53. Numerosity. While the exact number of Class members is unknown to Plaintiffs at this time, and will be ascertained through appropriate discovery, Plaintiffs are informed and believe that the Class consists of thousands of members. The number of individuals who comprise the Class is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

54. Typicality. Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by GNC's wrongful conduct as complained of herein, in violation of federal and state law. Plaintiffs are

unaware of any interests that conflict with or are antagonistic to the interests of the Class.

55. Adequacy of Representation. Plaintiffs will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in consumer class action lawsuits and complex litigation. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs are aware of their duties and responsibilities to the Class.

56. Commonality. GNC has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are, *inter alia*:

a. Whether, during the Class Period, GNC used false representations and falsely advertised price discounts on its products sold on the GNC website;

b. Whether, during the Class Period, GNC advertised its "discounted" products in a deceptive, false, or misleading manner;

c. Whether, during the Class Period, the market prices advertised by GNC were the prevailing market prices for the respective products sold at the GNC website during the three month periods preceding the dissemination and/or publication of the advertised former prices;

d. Whether, during the Class Period, GNC's advertised "Regular" prices for its products are determined by averaging the price of the given product in the prevailing market over the previous three months;

e. Whether GNC engaged in unfair, unlawful, and/or fraudulent business

practices under California Law;

f. Whether GNC misrepresented and/or failed to disclose material facts about its product pricing and discounts;

g. Whether GNC has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

h. Whether GNC advertised the date on which the "Regular" price of a product was determined;

i. Whether GNC's alleged business practices constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the CLRA by making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;

j. Whether GNC's business practices, alleged herein, constitute misleading and deceptive advertising under the FAL;

k. Whether GNC's business practices, alleged herein, constitute "unfair methods of competition" and "unfair or deceptive acts or practices", as set forth in the UTPCPL;

l. Whether GNC's business practices was a breach of the implied covenant of good faith and fair dealing inherent in all contracts;

m. Whether GNC's conduct, as alleged herein, was intentional and knowing;

n. Whether Class members are entitled to damages and/or restitution, and in what amount;

o. The nature and extent of equitable remedies, including restitution of shipping costs; and declaratory and injunctive relief to which Plaintiffs and the Class are entitled;

p. Whether GNC is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

q. Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

57. Superiority of Class Action. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

## FIRST CAUSE OF ACTION

**Violation of 73 P.S. 201-1, *et seq*.**
**Unfair or Deceptive Acts or Practices**
**(On Behalf of the National Class, or Alternatively the Pennsylvania Subclass)**

58. Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

59. Plaintiffs bring this action individually under the laws of Pennsylvania, and on behalf of the National Class. In the alternative, this claim is brought by Plaintiffs Gennock and Styslinger on behalf of the Pennsylvania Subclass.

60. During the relevant time period, the Terms and Conditions on GNC's website stated:

> These Terms and Conditions supersede any other agreement between you and [Defendants] to the extent necessary to resolve any inconsistency or ambiguity between them. These Terms and Conditions *will be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania*, without giving effect to any principles of conflicts of laws. Any action seeking legal or equitable relief arising out of or relating to this Web Site will be brought only in the federal or state courts of the Commonwealth of Pennsylvania. A printed version of these Terms and Conditions will be admissible in judicial and administrative proceedings based upon or relating to these Terms and Conditions to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

(Emphasis Added.) Accordingly, Pennsylvania law applies to all consumers who purchased an item from GNC's Website.

61. Plaintiffs, members of the Class, and Defendants are "persons" within the meaning of the UTPCPL.

62. The products purchased by Plaintiffs and the Class are "goods...primarily for personal, family or household purposes." 73 P.S. § 201-9.2

63. The UTPCPL declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 21 of this act." 73 P.S. § 201-3.

64. Under clause (4), unfair methods of competition and unfair or deceptive acts or practices are defined as "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." 73 P.S. § 201-2(4)(xi).

65. Clause (4) also defines as unlawful "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

66. Defendants violated the UTPCPL because it made false and misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

67. Defendants also violated the UTPCPL because their pricing scheme was deceptive in that it created the likelihood that consumers would be confused and deceived into believing that they were purchasing products at substantial discounts, when in fact, they were not. Indeed, the "on sale" products purchased by Plaintiffs and the class members actually were being sold at, or above, their market price, yet Plaintiffs and the class members purchased these products believing that the products were substantially discounted from the price at which they regularly were sold.

68. Plaintiffs suffered an ascertainable loss as a result of Defendants' conduct because

they purchased a product they otherwise would not have purchased but for Defendants' fraudulent and deceptive pricing scheme. Moreover, absent Defendants' deceptive and misleading conduct, Plaintiffs could have purchased their products at a lower cost than offered by Defendants.

69. Accordingly, Plaintiffs and the class are entitled to recover actual damages, statutory damages, treble damages and/or other additional relief as this court deems necessary or proper. Additionally, Plaintiffs are entitled to costs and reasonable attorney fees.

## SECOND CAUSE OF ACTION

**Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* -**
**Untrue, Misleading and Deceptive Advertising**
**(On Behalf of the California Subclass)**

70. Plaintiffs Carter, Harrison, and Kaskorkis hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

71. California Business and Professional Code, section 17501, states that:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

For the purpose of section 17501, the retail market price at the time of publication of such advertisement is the retail price in locality wherein the advertisement is published.

72. The protections of the FAL cannot be waived by contract.

73. At all material times, GNC engaged in a scheme of advertising that its products were subject to a discount when such discounts were illusory and did not reflect the "prevailing market price" of the item for a particular time period in a particular location, or even the price at which the product was recently sold on GNC's website.

74. At all material times, GNC did not include the date on which its "Regular" price was established.

75. GNC's advertisement of an inflated "Regular Price" misrepresented and/or omitted the true nature of GNC's pricing. Said advertisements were made to consumers located within the State of California and come within the definition of advertising as contained in CAL. BUS. & PROF. CODE §§ 17500, *et seq*., in that such promotional materials were intended as inducements to purchase products on GNC's website and are statements disseminated by GNC to Plaintiffs and other members of the California Subclass. GNC knew, or in the exercise of reasonable care should have known, that the statements regarding its pricing were false, misleading, deceptive and violated California law.

76. GNC has prepared and distributed within California, *via* its retail website, www.GNC.com, advertising that its products were subject to substantial discounts. Plaintiffs necessarily and reasonably relied on GNC's statements regarding the pricing of its products, and all members of the California Subclass were exposed to such statements. Consumers, including Plaintiffs and members of the California Subclass, were among the intended targets of such representations.

77. The above acts of GNC, in disseminating said misleading and deceptive statements throughout the United States, including to Plaintiffs and members of the California Subclass, were and are likely to deceive reasonable consumers by obfuscating the true nature of GNC's discounts. Thus, the above acts constitute violations of CAL. BUS. & PROF. CODE §§ 17500, *et seq*.

78. Plaintiffs and other members of the California Subclass who purchased products from GNC's website suffered a substantial injury. Had Plaintiffs and members of the California Subclass known that GNC's materials, advertisements, and other inducements misrepresented and/or omitted the true nature of GNC's discounts, they would not have purchased products from GNC.com, or would have paid less for them.

79. Plaintiffs, on behalf of themselves and all other similarly situated consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (2) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or, alternatively, requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any products purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

## THIRD CAUSE OF ACTION
**Violation of CAL. CIV. CODE §§ 1750, *et seq.*-**
**Misrepresentation of the Existence of a Discount**
**(On Behalf of the California Subclass)**

80. Plaintiffs Carter, Harrison, and Kaskorkis hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

81. The protections of the CLRA cannot be waived by contract.

82. GNC sells "goods" and "services" as defined by California Civil Code § 1761.

83. Each of the Defendants is a "person" as defined by California Civil Code § 1761(c).

84. Plaintiffs and California Subclass's members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased the products from GNC.com for personal, family or household use.

85. The sale of the products to Plaintiffs and California Subclass's members *via* GNC's website is a "transaction" as defined by California Civil Code § 1761(e).

86. As described herein, GNC violated the Consumers Legal Remedies Act ("CLRA") by falsely representing the nature, existence, and amount of price discounts by fabricating inflated

market or “Regular” prices. Such a pricing scheme violates California Civil Code: (i) Section 1770(a)(5) because GNC represented that its products have characteristics and benefits (discounts) that they do not have (because the items were not actually sold at the advertised “Regular” price for a reasonable period of time, and thus no true discount is being offered); (ii) Section 1770(a)(7) because GNC represented that its products were of a particular standard, quality, or grade (that the subject products were worth a higher “Regular” price and thus were more valuable) when they are of another (the products are not worth the stated “Regular” price and thus are not as valuable as advertised); (iii) Section 1770(a)(9) because GNC advertised goods with the intent not to sell them as advertised (because Defendant knew the goods were not valued at the advertised “Regular” prices); (iv) Section 1770(a)(13) because GNC made false or misleading statements of fact concerning the amount of a price reduction (because the advertised “Regular” prices were false and inflated, and thus the consumers did not receive the discounts they thought they were receiving); and (v) Section 1770(a)(14) because GNC represented that the transaction confers or involves rights (the right to receive the offered discount amount) which it does not have or involve (the stated discounts are false or inflated, so that the consumer is not receiving the discount that was offered or advertised).

87. Plaintiffs relied on GNC’s false representations in deciding to purchase goods on the GNC website. Plaintiffs would not have purchased such items absent GNC’s unlawful conduct.

88. Plaintiffs and California Subclass members were harmed as a result of GNC’s unfair competition and deceptive acts and practices. Had GNC disclosed the true nature of its discounts, Plaintiffs and the California Subclass would not have been misled into purchasing products from GNC’s website, or, alternatively, would have paid less for them.

89. Plaintiffs, on behalf of themselves and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the state of California, seek injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, which were subject to GNC's unlawful pricing policy, or alternatively requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any products purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

90. Plaintiffs provided each of the Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) *via* certified mail, demanding that GNC correct such violations.

91. GNC failed to respond to Plaintiffs' CLRA notice within 30 days of its receipt. Thus, Plaintiffs seek all available damages under the CLRA for all violations complained of herein, including but not limited to statutory damages, punitive damages, attorney's fees and cost, and any other relief that the Court deems proper on behalf of the California Subclass.

**FOURTH CAUSE OF ACTION**
**Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
**Unlawful Business Acts and Practices**
**(On Behalf of the California Subclass)**

92. Plaintiffs Carter, Harrison, and Kaskorkis hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

93. The protections of the UCL cannot be waived by contract.

94. California Business and Professional Code, section 17501, states:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

95. Federal regulations also prohibit the use of deceptive and illusory discounts:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a).

96. California Civil Code § 1770(a)(5) prohibits representing goods or services as having characteristics and benefits that they do not have.

97. California Civil Code § 1770(a)(7) prohibits representing goods or services as having a particular standard, quality, or grade when they are of another.

98. California Civil Code § 1770(a)(9) prohibits advertising goods or services with intent not to sell them as advertised.

99. California Civil Code § 1770(a)(13) prohibits making false or misleading statements of fact concerning reasons for or the existence or amounts of price reductions.

100. California Civil Code § 1770(a)(14) prohibits representing that a transaction confers or involves rights which it does not have or involve.

101. The business practices alleged above are unlawful under California Business & Professional Code §§ 17500, *et seq*., California Civil Code §§ 1770(a)(9) & (13) and federal

regulations, each of which forbids GNC's untrue, fraudulent, deceptive, and/or misleading marketing and advertisements.

102. Plaintiffs and the California Subclass members were harmed as a result of GNC's unfair competition and deceptive acts and practices. Had GNC disclosed the true nature of its "discounts," Plaintiffs and the California Subclass would not have been misled into purchasing products from GNC's website, or, alternatively, would have paid less for them.

103. Plaintiffs, on behalf of themselves and all other similarly situated California consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or, alternatively, requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any product purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

**FIFTH CAUSE OF ACTION**
**Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
**Unfair Business Acts and Practices**
**(On Behalf of the California Subclass)**

104. Plaintiffs Carter, Harrison, and Kaskorkis hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

105. The protections of the UCL cannot be waived by contract.

106. Plaintiffs and other members of the California Subclass suffered a substantial injury by virtue of GNC's unlawful scheme of advertising that its products were subject to a discount when such discounts were illusory and did not reflect the "prevailing market price" of the item

during any particular time period at a particular location or even the price at which the product was previously sold on GNC's website.

107. GNC's actions alleged herein violate the laws and public policies of California and the federal government as set out in preceding paragraphs of this Complaint.

108. There is no benefit to consumers or competition by allowing GNC to deceptively market and advertise nonexistent discounts in violation of California Law.

109. The gravity of the harm visited upon Plaintiffs and California Subclass members outweighs any legitimate justification, motive, or reason for marketing and advertising discounted products in a deceptive and misleading manner which violates California law. Accordingly, GNC's actions are immoral, unethical, and unscrupulous, offend the established California public policies, and cause substantial injury to Plaintiffs and members of the Class.

110. The above acts of GNC, in disseminating said misleading and deceptive statements throughout California to consumers, including Plaintiffs and members of the California Subclass, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the "discount" and the existence of the "discounted" product in violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.*, and California Civil Code §§ 1770(a)(9) & (13).

111. Plaintiffs and California Subclass members were harmed and suffered actual damages as a result of GNC's unfair competition and deceptive acts and practices. Had GNC disclosed the true nature of the discounts, Plaintiffs and the California Subclass would not have purchased products from GNC's website or, alternatively, would have paid significantly less for them.

112. Plaintiffs, on behalf of themselves and all other similarly situated California consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive

relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or alternatively requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any product purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

**SIXTH CAUSE OF ACTION**
**Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
**Fraudulent Business Acts and Practices**
**(On Behalf of the California Subclass)**

113. Plaintiffs Carter, Harrison, and Kaskorkis hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

114. The protections of the UCL cannot be waived by contract.

115. Such acts of GNC as described above constitute a fraudulent business practice under CAL. BUS. & PROF. CODE §§ 17200, *et seq*.

116. As more fully described above, GNC misleadingly markets and advertises its products as discounted from a "Regular Price," when such discounts are illusory and/or overstated. GNC's misleading marketing and advertisements are likely to, and do, deceive reasonable consumers. Indeed, Plaintiffs and other members of the California Subclass were unquestionably deceived about the nature of GNC's pricing, as GNC prominently displayed its products as discounted on its website, which consumers must use to purchase GNC's offerings.

117. GNC's misleading and deceptive practices caused Plaintiffs and other members of the California Subclass to purchase the products and/or pay more than they would have otherwise had they known the true nature of GNC's advertisements.

118. Plaintiffs and California Subclass members were harmed as a result of GNC's unfair competition and deceptive acts and practices.

119. Plaintiffs, on behalf of themselves and all other similarly situated California consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy, or alternatively requiring GNC to price match any competitor's advertised price for the same product, refund any shipping and handling fees for any products purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

**SEVENTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of the National Class)**

120. Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

121. Plaintiffs and members of the National Class contracted with Defendants to provide goods.

122. Included in all contracts with the implied covenant of good faith and fair dealing, which obligates contracting parties to deal with each other honestly, fairly, and in good faith, so as to not destroy the right of the other party or parties to receive the benefits of the contract.

123. Defendants advertised Plaintiffs and members of the National Class would receive a "discount" by purchasing their products on GNC's website. This discount was advertised as a reduction from Defendants' "regular" pricing. Defendants' "regular" pricing was only reasonably

known to Defendants, and Plaintiffs and members of the National Class relied on Defendants' honesty when Defendants calculated their "discounts."

124. Defendants breached the implied covenant of good faith and fair dealing by using false or inflated "regular" prices when calculating the "discounts" owed to Plaintiffs and members of the National Class. This frustrated the object and benefits of the transaction for Plaintiffs and members of the National Class, namely to receive discounted products.

125. Plaintiffs and the National Class did not receive the discount advertised and were harmed as a result of GNC's unfair and dishonest business practices. Plaintiffs and the National Class are entitled to the actual benefit of their contracts with Defendants, *i.e.* the difference between the price paid and the price that would have been paid if Defendants would have properly calculated the "discounts" owed using their actual "regular" prices.

**<u>EIGHTH CAUSE OF ACTION</u>**
**Unjust Enrichment**
**(On Behalf of the National Class)**

126. Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

127. Plaintiffs conferred a benefit on Defendants by purchasing products falsely advertised as "on sale."

128. Defendants appreciated such benefits by charging Plaintiffs bank accounts and accepting payment from the same.

129. Defendants have accepted and retained the benefits appreciated as they have not remitted the payments made by Plaintiffs.

130. Finally, it would be inequitable for Defendants to retain the benefits they accepted. Plaintiffs would not have purchased products from Defendants' Website absent Defendants' false

and deceptive conduct. Additionally, Plaintiffs could have paid less for the products they purchased had they known the "on sale" products they purchased actually were being sold at, or above their market prices. Accordingly, Plaintiffs' payments to Defendants unjustly enriched Defendants because Plaintiffs either would not have made those payments to Defendants, or Plaintiffs could have purchased the same products for a lower value absent Defendants' unfair, unlawful and deceptive conduct.

131. Plaintiffs and the members of the class are entitled to restitution and/or disgorgement of some or all profits, benefits and other compensation obtained and retained by Defendants from their deceptive, misleading and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the proposed Class pray for relief and judgment as follows:

A. For an order declaring that this action is properly maintained as a class action, appointing Plaintiffs as representatives for their respective Classes, and appointing Plaintiffs' counsel as Class counsel;

B. For an order awarding Plaintiffs and the members of the Class actual damages;

C. For an order awarding Plaintiffs and the members of the Class restitution and/or disgorgement and/or for an order directing each of the Defendants to allow its customers to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy, or price match any competitor's advertised price for the same product purchased from GNC.com that were subject GNC's unlawful pricing policy;

D. Order Defendants to engage in a corrective advertising campaign;

E. For an order enjoining each of the Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

F. For restitution of all shipping and handling fees charged for products purchased from GNC.com subject to GNC's unlawful advertising;

H. For an order awarding Plaintiffs' attorneys' fees and costs of suit, including expert witness fees, as permitted by law; and

I. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL

Plaintiffs demand a trial by jury for all of the claims asserted in this Complaint so triable.

Respectfully submitted,

June 24, 2019

**CARLSON LYNCH, LLP**

By: /s/ Gary F. Lynch
Gary F. Lynch
*glynch@carlsonlynch.com*
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

**AHDOOT & WOLFSON, PC**

Robert Ahdoot*
*rahdoot@ahdootwolfson.com*
Tina Wolfson*
*twolfson@ahdootwlfson.com*
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

**FINKELSTEIN & KRINSK LLP**

Jeffrey R. Krinsk, Esq.*
*jrk@classactionlaw.com*
Trenton R. Kashima, Esq.*
*trk@classactionlaw.com*
550 West C Street, Suite 1760

San Diego, California 92101-3579
Tel: (619) 238-1333
Fax: (619) 238-5425

**BARBAT, MANSOUR & SUCIU PLLC**

Nick Suciu III, Esq.*
*nicksuciu@bmslawyers.com*
Barbat Mansour & Suciu PLLC
Bloomfield Hills, Michigan 48302
Tel: (313) 303-3472

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq.*
*rnathan@nathanlawpractice.com*
2901 W. Coast, Suite 200
Newport Beach, California 92663
Tel:(949)270-2798
Facsimile:(949)209-0303
*Attorneys for Plaintiffs and the Putative Classes*

*(*PRO HAC VICE APPLICATION TO BE FILED)*